**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| FREDRICK JOHNSON | CIVIL ACTION |
| VERSUS | |
| MIKE CAZES, ET AL. | NO. 17-1752-SDD-RLB |

## **RULING**

This matter is before the Court on the *Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(c) or, Alternatively, for Summary Judgment Pursuant to F.R.C.P. 56*[1] filed by Defendants, Sheriff Mike Cazes ("Sheriff Cazes") of the West Baton Rouge Sheriff's Office (WBRSO), and WBRSO Deputy Vance Matranga ("Deputy Matranga"). Plaintiff, Frederick Johnson ("Johnson"), has filed a *Memorandum in Opposition*.[2] For the reasons that follow, the Court finds that Defendants' *Motion* shall be GRANTED, and Johnson shall be granted leave to amend his *Complaint* with respect to certain claims.

**I. FACTUAL BACKGROUND**

In his *Complaint*, Johnson describes this action as "a case involving the use of excessive force and the failure to provide a basic and appropriate level of medical care by multiple parties,"[3] including the WBRSO. The case arises out of the events of December 10, 2016, when Johnson was standing in the parking lot of the Quick-n-Handy convenience store in Port Allen, Louisiana.[4] Port Allen Police Officer Jana Chustz

---

[1] Rec. Doc. No. 40.
[2] Rec. Doc. No. 52.
[3] Rec. Doc. No. 1, p. 1.
[4] *Id.* at p. 6.
53289

("Officer Chustz") had been dispatched to the Quick-n-Handy in reference to a person, namely, Johnson, who was allegedly remaining on the premises after being forbidden to do so.[5] Johnson alleges that when she saw him, Officer Chustz "confronted" him and "demanded that [he] step over to her squad car."[6] Before Johnson could comply with her order, he alleges, Officer Chustz "attempted to physically restrain"[7] him then "fired her taser at [him], missing him."[8] Then, Johnson "ran across LA-1, ending up in the parking lot of Brother's Mart,"[9] where Deputy Matranga of the WBRSO and Officer Reginald Mims of the Port Allen Police Department were waiting, one of them apparently behind the wheel of a WBRSO vehicle. Johnson claims that, despite the fact that he allegedly "was unarmed and posed no threat to himself or others"[10] and that the deputies allegedly "had no reason to believe Johnson was involved in or being sought in relation to a felony,"[11] one of the law enforcement officers (he does not specify which) "purposefully and intentionally rammed [him] with their police vehicle, breaking [his] leg."[12]

Johnson alleges that he "immediately informed the officers and/or deputies present that he believed his leg to be broken and that he needed to go to the hospital."[13] An ambulance and personnel from Acadian Ambulance Service arrived on the scene, but the result of their examination of Johnson is disputed. Johnson in his *Complaint* alleges that,

---

[5] Rec. Doc. No. 40-1, p. 4, citing Ex. 1.
[6] Rec. Doc. No. 1, p. 6.
[7] Rec. Doc. No. 1, p. 6.
[8] *Id.*
[9] Rec. Doc. No. 1, p. 7.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

53289

while Officer Chustz's report indicates that the medical personnel "examined Johnson and determined his injuries to be minor and that transport to a hospital was not necessary,"[14] Johnson also alleges that, in fact, the medical personnel on the scene "informed him that they recommended he be taken immediately to the hospital,"[15] which the officers on the scene then "refused to do."[16]

Johnson was transported to the West Baton Rouge Detention Center, where, upon intake, he allegedly told a staff member (named herein as John Doe 6) that "he believed his leg to be broken and that he needed to go to the hospital."[17] John Doe 6 allegedly poked Johnson's knee with her finger and, when he cried out, stated, "you said ouch so your leg can't be broken."[18] Johnson spent the night in a "hold cell," allegedly telling "every deputy and correctional officer he came across"[19] about his broken leg, only to be allegedly "ignored at each and every instance."[20] Johnson was seen by Nurse Iris Martin the next morning, who allegedly "noticed Johnson's condition and recommended that he be immediately taken to a hospital."[21] At that point, Johnson was transported to Our Lady of the Lake Hospital, where he was diagnosed with multiple fractures to his right leg. Surgery was required, but Johnson alleges that he had to wait until the next day for it to

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at p. 8.
[20] *Id.* at p. 8.
[21] *Id.* at p. 8.

53289

be performed, allegedly due to the detention center staff's "negligent action of feeding him prior to hospitalization."[22]

Johnson brings several claims against Defendants. First, pursuant to 42 U.S.C. § 1983, he alleges that Defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments.[23] With respect to Sheriff Cazes, Johnson alleges that it was his policy "to inadequately supervise and train [his] deputies"[24] and to "inadequately respond to instances of misconduct by deputies."[25] Those allegedly inadequate responses include refusing "to terminate, suspend, discipline, warn, or in any way punish and/or retrain [his] deputies."[26] Further, Johnson asserts that Defendants "committed the state law torts of assault and battery [and] also intentionally inflicted emotional distress on [him]."[27]

In their *Motion to Dismiss*,[28] Sheriff Cazes and Deputy Matranga argue that all claims against them should be dismissed, for the following reasons:

> (1) Sheriff Cazes did not participate directly in Plaintiff's arrest or medical treatment so as to subject Sheriff Cazes to liability under federal law in his individual capacity; (2) no alleged Constitutional deprivation was motivated by official policy so as to subject Sheriff Cazes to liability under federal law in his official capacity; (3) all of Plaintiff's false arrest and excessive force claims are barred by *Heck* and its progeny, and Deputy Matranga is otherwise entitled to qualified immunity and judgment in his favor as a matter of law, (4) Plaintiff's claims for denial of medical care fail as a matter of law because Defendants herein did not deprive Plaintiff of medical care.

---

[22] Rec. Doc. No. 1, p. 8.
[23] Rec. Doc. No. 1, p. 2.
[24] Rec. Doc. No. 1, p. 9.
[25] *Id*.
[26] Rec. Doc. No. 1, p. 9.
[27] Rec. Doc. No. 1, p. 11.
[28] Rec. Doc. No. 52.
53289

Although Defendants' *Motion* is styled as a *Motion to Dismiss* under Rule 12(c) and, in the alternative, as a *Motion for Summary Judgment*, Johnson's *Opposition* ignores Defendants' *Motion to Dismiss* arguments, focusing instead on summary judgment alone. In short, Johnson contends that there are significant disputed facts to be decided, and that the deciding "should be done by a trier of fact in a court of law, not in a motion for summary judgment."[29] The Court will address Johnson's claims in turn.

## II. LAW AND ANALYSIS

### A. Motions to Dismiss Under Federal Rule of Civil Procedure 12(c)

Defendants move for judgment under Rule 12(c) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is evaluated on the same basis as a motion to dismiss under Rule 12(b)(6).[30]

In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[31] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[32] "To

---

[29] Rec. Doc. No. 52, p. 7.
[30] *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).
[31] *In re Katrina Canal Breeches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[32] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
53289

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[33]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of this entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[34] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[35] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[37] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[38] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[39]

---

[33] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).
[34] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (internal citations and brackets omitted) (hereinafter *Twombly*).
[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) (hereinafter *Iqbal*).
[36] *Id.* at 678.
[37] *Id.*
[38] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tx. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[39] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
53289

When considering a Rule 12(b)(6) motion, courts are limited to reviewing the pleadings and any exhibits attached thereto. However, the Fifth Circuit Court of Appeal has provided a narrow exception to this rule whereby a "court may treat documents attached to a motion to dismiss as a part of the pleadings without converting the motion into one for summary judgment if the complaint refers to the documents, and the documents are central to the plaintiff's claim."[40]

B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[42] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[43] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[44] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the

---

[40] *St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of the Port of New Orleans*, 2012 WL 1118419, at *2 (E.D. La. Apr. 2, 2012) (citing *Lone Star Fund v. (U.S.) v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010)).
[41] Fed. R. Civ. P. 56(a).
[42] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[43] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[44] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

53289

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[45]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[46] All reasonable factual inferences are drawn in favor of the nonmoving party.[47] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[48] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[49]

### C. 42 U.S.C. § 1983

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[50] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct

---

[45] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[46] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[47] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[48] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[49] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[50] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
53289

complained of was committed by a person acting under color of state law."[51]  As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution – not for violations of duties of care arising out of tort law.[52] As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[53]

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[54]  Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.  However, to be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law.  In contrast, a state actor may have Section 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law.[55]

### D. Claims Against Sheriff Cazes in his Individual Capacity

Johnson specifies that Sheriff Cazes is being sued in both "his individual and official capacity."[56] However, Johnson does not plead any facts that demonstrate personal involvement by the Sheriff. Under the doctrine, his *Complaint* falls short of what is required

---

[51] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D. La. May 8, 1998); *Elphage v. Gautreaux*, 2013 WL 4721364, at *5 (M.D. La. Sept. 3, 2013).
[52] *Griffith v. Johnston*, 899 F.2d 1427, 1436 (5th Cir. 1990).
[53] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
[54] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).
[55] *Coleman v. East Baton Rouge Sheriff's Office*, 2014 WL 5465816, at *3 (M.D. La. Oct. 28, 2014).
[56] Rec. Doc. No. 1, p. 3.
53289

to hold a municipal official liable in his individual capacity under Section 1983. To successfully allege constitutional violations in a Section 1983 claim, the Fifth Circuit has held that a plaintiff "must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims."[57] In order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights. Overall, "[p]ersonal involvement is an essential element of a civil rights cause of action."[58]

All of the allegations in the *Complaint* that involve Sheriff Cazes are related to his potential liability in his official capacity, as the policymaker for the West Baton Rouge Sheriff's Office. There is no allegation that Sheriff Cazes was present during the events giving rise to this action or that any of his actions or inactions was a violation of Johnson's civil rights. Again, the allegations against him are entirely policy-based, relating to his alleged failure to train and supervise his staff. Accordingly, the Court finds that the Defendants' *Motion* shall be GRANTED, and the claims against Sheriff Cazes in his individual capacity dismissed without prejudice.

---

[57] *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002).
[58] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).
53289

### E. Claims Against Sheriff Cazes in his Official Capacity

#### 1. *Applicable Law*

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[59] Accordingly, the claims against Sheriff Cazes in his official capacity are, in effect, claims against the municipal entity he represents, namely, the West Baton Rouge Sheriff's Office.[60] A plaintiff asserting a Section 1983 claim against a municipal official in his official capacity or a Section 1983 claim against a municipality "must show that the municipality has a policy or custom that caused his injury."[61] To establish an "official policy," a plaintiff must allege either of the following:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[62]

To state a claim for municipal liability, the policymaker must have final policymaking authority.[63] "[W]hether a particular official has final policymaking authority

---

[59] *Monell v. New York City Dep't of Soc. Serv, of City of New York*, 436 U.S. 658, 691 n. 55 (1978).
[60] *Graham,* 473 U.S. at 165; *see also Bellard v. Gautreaux*, No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) amended in part, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), *affirmed*, 675 F.3d 454 (5th Cir. 2012) *and affirmed*, 675 F.3d 454 (5th Cir. 2012).
[61] *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).
[62] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).
[63] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).
53289

is a question of *state law.*"[64] Moreover, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff" for the necessary determination to be made on the policy's relative constitutionality.[65]

Although "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity,"[66] absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[67] A municipality cannot be held liable under Section 1983 for the tortious behavior of its employees under a theory of *respondeat superior.*[68] "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[69] However, a plaintiff may establish a policy or custom based on isolated decisions made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.[70]

To state a claim, plaintiffs "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a

---

[64] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotations omitted) (emphasis in original).
[65] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).
[66] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).
[67] *Id.*
[68] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[69] *Id.*
[70] *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002)(citing *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 124–25, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996)).
53289

constitutional violation."[71] Liability for failure to promulgate a policy requires that the defendant acted with deliberate indifference.[72] "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[73] "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'"[74] A mere showing of generalized risk is insufficient to establish deliberate indifference; rather, the plaintiff must show that a reasonable policy maker would conclude that the constitutional deprivation that occurred was a plainly obvious consequence of his decision.[75]

### 2. Analysis

Johnson alleges, and Defendants do not dispute, that Sheriff Cazes was at all relevant times the "final policy maker"[76] for the WBRSO. As the plaintiff in a Section 1983 suit against a municipal official in his official capacity, Johnson "must show that the municipality has a policy or custom that caused his injury."[77] To that end, Johnson cites Sheriff Cazes' alleged "policy and/or custom . . .to inadequately supervise and train [his] deputies, officers, and medical personnel."[78] Additionally, Johnson identifies Sheriff Cazes as having a policy "to inadequately respond to instances of misconduct by deputies

---

[71] *McClure v. Biesenbach*, No. 08–50854, 2009 WL 4666485, at *2 (5th Cir. Dec.9, 2008) (unpublished) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir.1997)).
[72] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).
[73] *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).
[74] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010)(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Brown*, 520 U.S. at 407, 117 S.Ct. 1382)).
[75] *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 411 (1997).
[76] Rec. Doc. No. 1, p. 3.
[77] *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).
[78] Rec. Doc. No. 1, p. 9.
53289

and/or officers . . . including a refusal to terminate, suspend, discipline, warm, or in any way punish and/or re-train [his] deputies or officers."[79] Even assuming *arguendo* that Johnson has pleaded the existence of an "official policy" capable of giving rise to municipal liability, he nevertheless fails to articulate how that policy was the moving force of the alleged constitutional violations. Johnson does not describe any specific training that Sheriff Cazes failed to offer his deputies or medical personnel, nor does he allege facts to show that the lack of training in any particular area caused the alleged constitutional violations.

Moreover, although Johnson alleges that Sheriff Cazes has a policy of doling out inadequate discipline with respect to his deputies in general, he does not allege any specific incident where Deputy Matranga committed misconduct that was inadequately handled, nor, again, does he allege that Sheriff Cazes' failure to adequately discipline Deputy Matranga gave rise to the violations alleged in this case. Johnson does offer the boilerplate, conclusory statement that Sheriff Cazes' actions "are actual, legal, and proximate causes of Johnson's damages,"[80] but such a statement, without facts to support it, is insufficient to support an inference of liability. Johnson also states that as a result of Sheriff Cazes' policies, "defendants knew that their actions would not be properly monitored by supervisory deputies and/or officers, and that misconduct would be tolerated rather than investigated and/or punished."[81] Again, without factual support, that

---

[79] *Id.*
[80] *Id.*
[81] Rec. Doc. No. 1, p. 9.
53289

statement is too conclusory to survive a motion to dismiss. Accordingly, Defendants' *Motion* shall be GRANTED, and the claims against Sheriff Cazes in his official capacity are dismissed without prejudice.

F. <u>Summary Judgment on Excessive Force Claims Against Deputy Matranga</u>

Johnson seeks to hold Deputy Matranga liable for allegedly using excessive force against him in the course of his arrest.[82] Defendants move for summary judgment on that excessive force claim, arguing that, under the doctrine set forth in *Heck v. Humphrey*, it necessarily fails because Johnson was arrested for, and pleaded guilty to, Louisiana Revised Statute 14:108, Resisting an Officer. Defendants attach as an exhibit Johnson's deposition testimony, where he states that he pleaded guilty to the charge. Defendants further draw the Court's attention to the minutes from Port Allen City Court on February 8, 2017, which reflect that Johnson entered a plea of guilty to Resisting an Officer and was sentenced to five days in the Parish jail, with credit for time served.[83]

When a plaintiff brings a Section 1983 claim against the police officer who arrested him, "the district court must first 'consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'"[84] The Section 1983 claim is barred unless the plaintiff's conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas

---

[82] Actually, Johnson pleads that "Matranga and/or Mims purposefully and intentionally rammed" him with their police vehicle. This allegation is fatally vague and fails to state a claim against Deputy Matranga.
[83] See Rec. Doc. No. 40-5, p. 52, lines 14-19; Rec. Doc. No. 37-2.
[84] *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000)(quoting *Heck*, 512 U.S. at 487).
53289

corpus."[85] In his *Opposition*, Johnson does not point to any evidence that his conviction for Resisting an Officer has been reversed, expunged, or otherwise invalidated. In fact, he does not address the issue of whether his claims are barred by *Heck* at all.

The Fifth Circuit has clearly held that "when there is no temporal and conceptual distinction between the factual basis for the conviction and the excessive force claim, that is, when the complained of use of force is applied during or simultaneously with the arrest, *Heck* applies."[86] The summary judgment evidence cited by Defendants demonstrates that Johnson's conviction arises out of the same events that give rise to his Section 1983 claim. And, the use of force alleged by Johnson – namely, one of the WBRSO deputies striking him with a vehicle – was applied during Johnson's arrest. This Court finds that a finding of liability on Johnson's excessive force claim would necessarily imply the invalidity of his criminal conviction for resisting arrest, and that Johnson has failed to demonstrate any genuine issues of material fact on the issue of his having pled guilty to resisting. Johnson's excessive force claim against Deputy Matranga is barred by *Heck* and, accordingly, dismissed with prejudice.

---

[85] *See Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir.1996) (quoting *Heck*, 512 U.S. at 487) (internal quotations omitted).
[86] *Id.* (citing *Walter v. Horseshoe Entertainment*, 483 Fed.Appx. 884, 887 (5th Cir. 2012); *Bush*, 513 F.3d at 495, 498 (use of force after arrest and handcuffing when resistance by the arrestee had ceased was temporally and conceptually distinct from the criminal conviction); *DeLeon*, 488 F.3d at 656-657 (finding that the complaint did not allege that the claims of excessive force were separable from the plaintiff's aggravated assault on the officer); *Pratt v. Giroir*, 2008 WL 975052, at *5 (E.D. La. Apr. 8, 2008) ("Fifth Circuit precedent is clear that whether the plaintiff alleges excessive force during or simultaneous with an arrest versus after an arrest results in distinct consequences under *Heck*.").
53289

G. <u>State Law Claims</u>

Johnson attempts to bring a number of claims under state law, as well, asserting in conclusory fashion that "Defendants also committed the state law torts of assault and battery against the Plaintiff. Defendants also intentionally inflicted emotional distress on the Plaintiff."[87] Not only are the elements of these claims and any facts in their support nowhere to be found in the *Complaint*; as Defendants correctly note, federal courts have held that the *Heck* rule also serves to bar state law claims that challenge the validity of the underlying criminal conviction.[88] Accordingly, this Court finds that the *Motion* should be granted with respect to Johnson's state law claims.

H. <u>Leave to Amend</u>

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." A district court has limited discretion to deny a litigant leave to amend because Rule 15 evinces a bias in favor of granting leave to amend.[89] Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend."[90] In determining whether to grant leave, a court may consider several factors, including, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

---

[87] Rec. Doc. No. 1, p. 11.
[88] *See*, e.g., *Sheppard v. City of Alexandria*, No. 10-2396, 2012 WL 3961820 at *2 (W.D. La. Sep. 10, 2012); *Hainze v. Richard*, 207 F.3d 795, 799 (5th Cir. 2000).
[89] *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).
[90] *Jones v. Robinson Prop. Grp.,* L.P., 427 F.3d 987, 994 (5th Cir. 2005).
53289

allowance of the amendment, [and] futility of amendment ...."[91] The "futility" of amendments to a complaint is measured by whether "the amended complaint would fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)."[92]

Johnson has not explicitly requested leave to amend; in his *Opposition*, he prays in the alternative for oral arguments on the *Motion to Dismiss*. Nevertheless, in the spirit of liberality evinced by Federal Rule of Civil Procedure 15(a)(2), the Court finds that Johnson should be granted leave to amend his *Complaint*. That leave to amend does not extend, however, to Johnson's state law claims and his claims against Deputy Matranga, which the Court concluded *infra* to be *Heck*-barred. Because *Heck* bars those claims as a matter of law, any amendment would be futile.

But Johnson is free to amend his *Complaint* with respect to his claims against Sheriff Cazes; specifically, Johnson is granted leave to plead additional facts that show personal involvement by the Sheriff in connection with the claim against him in his individual capacity, and/or to expand upon on the official capacity policy-related claims in accordance with the above *Ruling*.

---

[91] *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 2d 222 (1962)).
[92] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted).
53289

### III. CONCLUSION

**IT IS HEREBY ORDERED** that the *Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(c) or, Alternatively, for Summary Judgment Pursuant to F.R.C.P. 56* [93] shall be GRANTED. Summary judgment is granted as to Plaintiff's claims against Deputy Vance Matranga, and his claims against Sheriff Cazes are dismissed without prejudice. Plaintiff Frederick Johnson is granted leave to file an *Amended Complaint* within thirty (30) days of this Court's *Ruling*.

Signed in Baton Rouge, Louisiana, on September 18, 2019.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[93] Rec. Doc. No. 40.
53289